## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-00289 |
| v. | ) | |
| | ) | |
| MORNINGSTAR, INC., | ) | |
| | ) | Judge Sharon Johnson Coleman |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Daniels ("Plaintiff") filed his Complaint against Defendant Morningstar, Inc. ("Defendant") alleging discriminatory termination in violation of Title I of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"). Before the Court are Plaintiff's motion for summary judgment and Defendant's motion for summary judgment. For the following reasons, the Court denies Plaintiff's motion for summary judgment [23] and grants Defendant's motion for summary judgment [26].

## BACKGROUND

### I.      Federal Rule of Civil Procedure 56 and Local Rule 56.1

Local Rule 56.1 provides specific details for the process by which litigants in the Northern District of Illinois should approach summary judgment motions and responses. Local Rule 56.1(a)(2) requires the moving party to file "a statement of material facts… that attaches the cited evidentiary material." Local Rule 56.1(b)(2) requires the party opposing summary judgment to file a response to the moving party's statement of material facts "that attaches any cited evidentiary materials not attached to [the moving party's] statement [of material facts]." In responding to the statement of material facts, the non-moving party must admit the asserted fact, dispute the asserted fact, or admit

in part and dispute in part the asserted fact. *See* Local Rule 56.1(e)(2). The response must consist of numbered paragraphs corresponding to the numbered paragraphs in the statement of material facts or statement of additional material facts. *See* Local Rule 56.1(b)(2); (c)(2).

"A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." Local Rule 56.1(e)(2). If the non-moving party wishes to assert a new fact that is not responsive to the moving party's asserted facts, the party opposing summary judgment can file a statement of additional material facts. *See* Local Rule 56.1(b)(3). Local Rule 56.1(b)(3) allows the opposing party to file a statement of additional material facts not asserted in the moving party's statement of facts or its response, which attaches any cited evidentiary material not attached to the statement of material facts or the response. The statement of additional material facts is separate from the response to the statement of material facts.

### 1. *Plaintiff's Response to Defendant's Local Rule 56 Statement of Material Facts*

Plaintiff failed to abide by the Local Rules in his response to Defendant's statement of material facts. Particularly, several of Plaintiff's responses improperly add additional information in his response that should have been filed as a separate filing per Local Rule 56.1(b)(3), fail to constitute a proper response under Local Rule 56.1(e)(2), include improper legal argument in violation of Local Rule 56.1(e)(2), and fail to cite specific evidentiary material when disputing a certain face as required by Local Rule 56.1(e)(3). While the Court has discretion to require strict compliance with Local Rule 56.1, it may insist on strict compliance. *Stevo v. Frasor,* 662 F.3d 880, 886-87 (7th Cir. 2011). The Court will exercise its discretion here due to the importance of promoting clarity in understanding factual disputes in summary judgment filings.

### a. *Inclusion of Additional Information in Violation of Local Rule 56.1(e)(2)*

As relevant here, Local Rule 56.1(e)(2) prohibits a responding party from asserting any new facts that are not fairly responsive to the asserted fact to which the response is made. *See* L.R.

2

56.1(e)(2). While Plaintiff admits many of Defendant's material statements, he provides additional, non-responsive information in his response to Defendant's statement of material facts . Doing so is improper. *McGuire v. United Parcel Service,* 152 F.3d 673, 675 (7th Cir. 1998). Local Rule 56.1(b)(3) allows a party who wishes to assert additional facts not contained in the statement of material facts to file a separate statement of additional material facts. *See* L.R. 56.1(b)(3); *McGuire,* 152 F.3d at 675. Accordingly, the Court strikes Plaintiff's Response Nos. 6, 12, 18, 21, 22, 24, 25, 37, 48, 56, 61, 63, 64, 65, 66, 67 and 68 to the extent the response contains additional, non-responsive information and deems Defendant's statements admitted.

### b.   *Improper Response Under Local Rule 56.1(e)(2)*

Local Rule 56.1(e)(2) also requires each response to admit, dispute, or admit in part and dispute in part the asserted fact. *See* L.R. 56.1(e)(2). Plaintiff provides no response to Defendant's Material Fact No. 57. Nor did Plaintiff respond to Defendant's Additional Statement of Material Facts. Again, this is improper. *See McGuire,* 152 F.3d at 675. Failure to provide a proper response under Local Rule 56.1(e)(2) results in an admission. *See id.* at 675. Therefore, the Court deems Defendant's Material Statement No. 57 and Defendant's Statement of Additional Material Facts admitted in full.

### c.   *Response Containing Legal Argument*

"A response may not assert legal arguments except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support." L.R. 56.1(e)(2). Courts in this district have disregarded legal arguments asserted in Rule 56.1 submissions. *See, e.g., Venticinque v. City of Chicago,* No. 21 C 3084, 2025 WL 92536, at *1 (N.D. Ill. Jan. 13, 2025) (Ellis, J.); *Fetzer v. Wal-Mart Stores, Inc.,* No. 13 C 9312, 2016 WL 792296, at *8 (N.D. Ill. Mar. 1, 2016) (Gottschall, J.) The Court will follow in suit. According, the Court strikes Plaintiff's Response Nos. 46 and 47 and deems the statements admitted in full.

d. *Failure to Attach Evidentiary Material When Disputing an Asserted Fact*

Local Rule 56.1(e)(3) requires the responding party to "cite specific evidentiary material that controverts the fact" when disputing a statement of material fact. L.R. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." (*Id.*) In disputing certain material facts, Plaintiff fails to cite evidence in support of the dispute. It is not the Court's duty to go on an expedition to find an exhibit that is neither cited nor attached to the filing. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Accordingly, the Court strikes Plaintiff's Response Nos. 5 and 20 for failure to cite and attach evidentiary material to support the basis for his dispute/denial and deems the statements admitted in full.

## II. Undisputed Facts[1]

The following facts are undisputed for the purpose of resolving the parties' motions for summary judgment.

Plaintiff began his employment with Defendant in May 2022 as a Program Manager in the Data Products group. Throughout his employment, Plaintiff reported to Rosie Hiler ("Hiler"), Head of Product Operations. On March 27, 2023, Hiler sent Plaintiff an email summarizing performance feedback that was previously provided on December 16, 2022 and March 17, 2023. The message included a twelve bullet-point paragraph identifying Plaintiff's performance deficiencies and directed Plaintiff to create an action plan for improvement by March 31, 2023. Plaintiff complied with the request. On April 25, 2023, Hiler sent Plaintiff a Performance Coaching Plan, which identified areas

---

[1] Defendant correctly notes that Plaintiff submitted identical statements in Plaintiff's Local Rule 56 Statement and Plaintiff's Statement of Additional Facts that Preclude Summary Judgment in Favor of Defendant. Accordingly, the Court will consider Defendant's Response as it addresses both filings in determining the undisputed facts in this matter.

4

of improvement, actions to be taken by Plaintiff, and measurements to be reviewed over the next 30 days. The Performance Coaching Plan was continuously updated throughout Summer 2023.

Hiler continued to speak with Plaintiff about concerns with his job performance after April 2023, including during 1-on-1 meetings. Plaintiff agreed with some of the criticisms regarding his job performance. After failing to submit his self-assessment in a timely manner, Plaintiff was again advised about the shortcomings of his job performance on two additional separate occasions. During a July 27, 2023 meeting, Hiler warned Plaintiff that failure to demonstrate improvement in the areas identified in his Performance Coaching Plan could result in a formal warning or termination.

Less than a week later, on August 2, 2023, Hiler and Karen Hogue ("Hogue"), People and Culture Business Partner, met with Plaintiff to discuss his performance. In a follow-up email, Hiler identified six bullet points where she expected to see immediate and consistent improvement in Plaintiff's job performance. Hiler, again, warned Plaintiff that failure to meet expectations would result in disciplinary consequences, including the possibility of termination of his employment.

On August 29, 2023, Hiler met with Plaintiff to inform him that he was still not meeting performance expectations and again reviewed areas for improvement. Four days later, Hiler and Hogue met with Plaintiff and issued a formal Performance Improvement Plan ("PIP"). The PIP detailed three areas of performance deficiency, provided examples of unsatisfactory performance in each area, and identified actions Plaintiff was expected to take to improve his job performance in each area. The PIP, which affirmed Plaintiff's at-will employment status with Defendant, warned, "if you fail to meet any standards of performance and conduct at any time in the future, you will receive further disciplinary action up to and including dismissal." According to the PIP, Plaintiff's job performance under the PIP would be reviewed on September 29, 2023. Plaintiff signed the PIP acknowledgment on September 7, 2023.

During the week of September 4, 2023, Hiler received additional feedback from Grace Paulus ("Paulus"), another manager, regarding Plaintiff's job performance. Paulus told Hiler that Plaintiff had become a liability to a project and requested Plaintiff be removed from the project, which was later corroborated in email. Based on this feedback, Hiler and Hogue decided to recommend terminating Plaintiff's employment, with Plaintiff's last day worked being September 14 or 15, 2023 and providing pay and benefits through September 29, 2023.

Plaintiff maintains that he suffered from severe depression, anxiety, and dissociations during all relevant times. Plaintiff sought medical attention on September 8, 2023 due to his growing concerns about the impact his depression was having on his life and work. Plaintiff's physician diagnosed Plaintiff with depression, started him on medication, and spoke to him about further options for psychiatric treatment. During the September 8, 2023 medical appointment, Plaintiff was prescribed Sertraline, which caused Plaintiff to experience fatigue and nausea. As a result, Plaintiff felt sick and slept through the weekend of September 9, 2023. Plaintiff, still feeling sick on Sunday, September 10, 2023, emailed Hiler, stating "I am not feeling well, and I anticipate that I will be able to return Wednesday. However, I will check-in with you on Tuesday with an update." Plaintiff was absent from work on September 11 and 12, 2023. Hiler interpreted Plaintiff's email as Plaintiff opting to take a sick day for a routine, minor illness. On September 12, 2023, Plaintiff uploaded a note from his doctor to Defendant's Workday system which stated "[Plaintiff] has been ill and unable to attend work. He contacted our office, and he was advised regarding his symptoms. He should be excused from work on 9/11/23 and 9/12/23." The note did not provide any additional information regarding Plaintiff's symptoms or diagnosis. Plaintiff did not include any other medical documentation related to his mental health conditions in his Workday file.

On September 12, 2023 at 3:40 p.m., Hiler and Hogue sent an email to Matt Wylie ("Wylie"), Global Head of Talent and Culture Business Partners, and Lisa McGarrity ("McGarrity"), Global

Head of People and Culture, Legal, recommending termination. McGarrity approved of the recommendation on September 12, 2023 at 5:17 p.m. Wylie confirmed approval at 6:18 p.m.

The events on the following day, September 13, 2023, deserve careful examination to properly understand the sequence of events. Plaintiff returned to work on September 13, 2023. At 12:09 p.m., Hiler emailed Plaintiff an invitation for a meeting scheduled for the following day. That same day, Plaintiff attended a medical appointment with his primary care provider. At that appointment, Plaintiff and his medical care providers agreed that Plaintiff should seek three weeks (and possibly six weeks) of daily, intensive treatment.

That same day, following the medical appointment, Plaintiff submitted an FMLA leave request to Defendant's third-party administrator, UNUM, the entity tasked with reviewing FMLA leave requests for Defendant's employees. Despite having worked on September 13, Plaintiff's request stated that he had been on FMLA leave since September 11, 2023. In addition to submitting his FMLA leave request, Plaintiff emailed Hiler and Hogue at 4:05 p.m. informing them for the first time of his need for a medical leave of absence: "I need to explore a medical leave at this time. I am working on collecting the necessary paperwork from my medical partners. We can discuss further on the call you have scheduled for tomorrow."

The following day, on September 14, Hiler and Hogue met with Plaintiff and informed him of the decision to terminate his employment. Plaintiff did not work after that date, but received pay and benefits through September 29, 2023.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When determining whether there a genuine issue of material fact exists, the Court must view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend,* 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (citation omitted).

## DISCUSSION

### I. Count I: Disability Discrimination and Failure to Accommodate

The Americans with Disabilities Act ("ADA") prohibits discrimination against "a qualified individual with a disability…" *See* 42 U.S.C. § 12112(a). An individual is considered to have a disability under the ADA if (1) he has an impairment that substantially limits one or more of his major life activities; (2) he has a record of such an impairment; or (3) his employer regards him as having such an impairment. *See* 42 U.S.C. § 12102(2). Temporary, short-term restrictions are not substantially limiting so as to support a finding of disability under the ADA. *See* 42 U.S.C. § 12101 *et seq.* An individual is not regarded as having an impairment that is transitory and minor, where the impairment has an actual or expected duration of 6 months or less. 42 U.S.C. § 12102(3)(B). While Plaintiff seems to take issue with Defendant's failure to accommodate his disability, for the purpose of determining coverage under the ADA, the main question is whether Plaintiff had a disability at the time of his termination.

Plaintiff contends that Defendant was aware of his disability when he failed to accommodate his leave of absence request and instead terminated Plaintiff. What's missing is any evidence that Defendant regarded Plaintiff as having a disability. Indeed, Plaintiff's motion for summary judgment and his opposition to Defendant's motion for summary judgment focus on his FMLA claim, including

whether his termination was lawful in light of informing Defendant of his leave of absence request.[2] The undisputed facts show that the only information Plaintiff provided to Defendant about his medical conditions were in a September 10, 2023 email to Hiler and in a doctor's note uploaded to the Workday system on September 12, 2023. Neither of these communications explicitly informs Defendant that Plaintiff suffered from severe anxiety and depression. Indeed, the September 10, 2023 email merely stated that Plaintiff "was not feeling well" and that he anticipated that he would "be able to return [to work on] Wednesday [September 13, 2023]." The September 12, 2023 doctor's note stated that Plaintiff had been "ill and unable to attend work" and requested that Plaintiff be "excused from work on 9/11/23 and 9/12/23." It is unreasonable to conclude that these communications provided a basis for Defendant to regard Plaintiff has having a disability. Such communication suggests Plaintiff was suffering from a minor, transitory illness that would not alert Defendant to any alleged disability. *See* 42 U.S.C. § 12102(3)(B). Nor is this a record of impairment as the communications do not identify any medical condition from which Plaintiff suffered; nor do the communications suggest that Plaintiff suffered from an impairment that substantially limited one or more of his major life activities. To the contrary, the communications suggest a routine sick day, nothing more.

Plaintiff's allegation that Defendant was aware of his disability based on Hiler's deposition testimony that she noticed delays or hesitations in Plaintiff's oral communications is likewise insufficient to prove disability. Indeed, Hiler, likewise, testified that she did not think Plaintiff's delays and hesitations were significant as Plaintiff always communicated in such manner, even during his interview. In other words, there was nothing abnormal about Plaintiff's oral communications to

---

[2] The Court notes that it appears that Plaintiff essentially copied and pasted Plaintiff's memorandum in support of his motion for summary judgment to his opposition to Defendant's motion for summary judgment, adding a few paragraphs quarreling with Defendant's cited caselaw. Plaintiff's decision to allow the Court to read an essentially identical filing and failing to properly respond to Defendant's motion in a focused manner is a waste of judicial resources and a practice that is duly noted by the Court.

suggest a medical condition. Accordingly, there are no disputed facts to suggest that Defendant regarded Plaintiff as having a disability and was therefore entitled to ADA protection.

## II.    Count II: Interference with Rights under FMLA[3]

To establish a claim for FMLA interference, a plaintiff must prove that (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied FMLA benefits to which he was entitled. *Riley v. City of Kokomo,* 909 F.3d 182, 188 (7th Cir. 2018).

Plaintiff alleges that he was placed on FMLA leave on September 11, 2023, three days before Defendant terminated his employment. By terminating his employment, Plaintiff argues that Defendant interfered with his rights under FMLA.

Like many of Plaintiff's asserted statements in his statement of material facts, his assertions are inaccurate. The undisputed facts show that Plaintiff submitted an FMLA leave request on September 13, 2023 to UNUM. Plaintiff stated in the FMLA request that he had been off work for FMLA since September 11, 2023. This is impossible, as Plaintiff submitted the FMLA request on September 13, 2023. Plaintiff also worked on September 13th and September 14th, making any statement that he had been "off work for FMLA since September 11, 2023" wholly inaccurate. Further, Plaintiff did not inform Hiler or Hogue that he needed to explore a leave of absence until September 13, 2023 at 4:05 p.m. Defendant decided to terminate Plaintiff on September 12, 2023, at 3:40 p.m., one day *before* Plaintiff requested FMLA leave. The timeline shows that Plaintiff's request for medical leave was made *after* the termination recommendation was approved making it inconceivable that Plaintiff's FMLA request led to his termination. Accordingly, no reasonable jury

---

[3] While Plaintiff's Complaint fails to allege under which theory he is asserting his FMLA claim, because Plaintiff's opposition to Defendant's Motion for Summary Judgment does not correct Defendant's statement that his FMLA claim seems to be premised on an interference with Plaintiff's FMLA rights, the Court will analyze his FMLA under an interference with rights theory. The Court notes that if Plaintiff asserted his FMLA claim under a retaliation theory, it would still fail for the same reasons.

could find that Plaintiff was terminated *because of* his FMLA leave request or that Defendant acted to interfere with his FMLA leave. *See Riley*, 909 F.3d 182, 188; *see also Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017) (district court properly entered summary judgment in employer's favor on FMLA interference and retaliation claims where employer decided to terminate employment before employee requested FMLA leave).

**CONCLUSION**

For these reasons, the Court denies Plaintiff's motion for summary judgment [23] and grants Defendant's motion for summary judgment [26].

**IT IS SO ORDERED.**

Date: 4/3/2025

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

11